UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRADLEY N. THOMA,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF SPOKANE, a municipal<br>corporation in and for the State<br>of Washington; and ANNE E.<br>KIRKPATRICK, a single person,<br><br>                    Defendants. | No.  CV-12-0156-EFS<br><br><br>**ORDER GRANTING IN PART (AS TO<br>BREACH OF CONTRACT AND PROMISSORY<br>ESTOPPEL) AND RESERVING RULING IN<br>PART DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

## I.    INTRODUCTION

On February 20, 2014, the Court heard from counsel as to Defendants' Motion for Summary Judgment, ECF No. 71.  After reviewing the pleadings and hearing argument, the Court took the matter under advisement and directed the parties to file supplemental briefing on the contract issue.  Having reviewed supplemental briefing the Court is fully informed and for the following reasons grants Defendants' Motion for Summary Judgment as to breach of contract and promissory estoppel.  The Court's ruling on other pending motions will follow.

## II.    BACKGROUND

**A.    Factual History[1]**

Plaintiff Bradley Thoma, began working for the City of Spokane Police Department ("SPD") on October 1, 1989.

---

[1] In ruling on the motion for summary judgment, the Court has considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

ORDER - 1

On the evening of September 23, 2009, Plaintiff was involved in an off-duty vehicle accident. He was arrested and charged with driving under the influence and failure to remain at the scene of the accident. On September 24, 2009, Defendant City of Spokane ("City") placed Plaintiff on administrative leave and initiated an internal investigation.

During the prosecution on the criminal charges, Plaintiff sought a deferred prosecution in which he was evaluated, and on October 9, 2009, diagnosed by Colonia Clinic with moderate alcohol dependence. ECF Nos. 79-10 & 91-1. On November 13, 2009, the Spokane County District Court entered an Order deferring prosecution. As part of that deferred prosecution agreement, Plaintiff was required to obtain an Ignition Interlock Driver's License ("IIL"), which limited him to driving only vehicles equipped with an ignition interlock device ("IID"). At the time of the November 13, 2009 Order deferring prosecution, Washington State law allowed, but did not require, employers to issue a "waiver" (referred to by statue as a "declaration") of the IID requirement on employer-owned vehicles used during working hours.

During the City's internal investigation, on November 9, 2009, Plaintiff's Spokane Police Guild representative advised Defendants that Plaintiff "was evaluated and determined to have an alcohol problem." ECF No. 79-8, at 19. This was the "first time [Plaintiff] had informed [his] employer of [his] alcoholism." ECF No. 79-5, at 47:17-19. The parties agree that "[p]rior to Plaintiff's arrest for DUI, there was no record in Plaintiff's personnel, civil service, or

1  medical files of any report that Plaintiff had any issue with alcohol

2  abuse." ECF No. 72 at 4 ¶ 19; ECF No. 113.

3      On December 9, 2009, Defendant Police Chief Anne Kirkpatrick

4  provided Plaintiff with a Notice of Intent to Terminate, pursuant to

5  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The Notice

6  explained that driving was a required essential function of

7  Plaintiff's job which Defendant Kirkpatrick believed Plaintiff was

8  unable to perform because he was required to maintain an IID on any

9  vehicle he drove. Defendant Kirkpatrick further explained that it was

10 not reasonable to place an IID on a police vehicle and that she did

11 not believe it was reasonable to waive the IID requirement. On

12 December 11, 2009, Plaintiff filed a complaint with the Human Rights

13 Commission ("HRC").

14     On December 14, 2009, Plaintiff's physician Dr. Mark Hart faxed

15 a short, hand-written letter to Defendants in which he stated that he

16 had diagnosed Plaintiff with alcoholism and suggested accommodations.

17 Whatever Plaintiff's alcohol consumption may have been up to that

18 time, he had always been able to perform his job duties as a police

19 officer. Plaintiff was never intoxicated while at work for the SPD.

20 Plaintiff reported that drinking caused him to drink with friends

21 instead of going to the gym, caused him to spend less time with his

22 daughter, but did not affect his ability to go to work.

23     During the December 17, 2009 *Loudermill* hearing Defendants

24 declined to equip Plaintiff's vehicle with an IID or to sign a waiver

25 allowing Plaintiff to operate a police vehicle without an IID.

26 Instead Defendant Kirkpatrick offered to put Plaintiff in non-

commissioned layoff status for two years, the time he was required to have an IIL, during which he would be placed at the top of the Civil Service list for other jobs with the City for which he may be qualified.  As part of the offer, at the conclusion of the two-year period, he would become reemployed with the City as a fully-commissioned Detective, rather than as a Sergeant, as discipline for his conduct leading to the criminal charges.  Plaintiff rejected Defendants' offer.

On December 21, 2009, Defendants terminated Plaintiff's employment, and issued a Termination of Employment Letter on December 30, 2009, finding that the accommodations requested by Plaintiff had been evaluated but rejected as unacceptable and unreasonable.  That same day, a grievance was filed on behalf of Plaintiff by the Spokane Police Guild ("Guild").

On October 18, 2010, the Guild filed an unfair labor practices claim against the SPD.  On January 5, 2011, the City and the Guild drafted an agreement between the City and the Guild to resolve the discipline grievance, and read the agreement over the phone to Plaintiff.  The Guild did not sign the agreement.  ECF No. 79-17.

Around January 2011, the SPD became aware that the law changed reducing driving restrictions for DUI deferred sentences from two years to one year.

On July 7, 2011, the HRC and the City began considering a settlement.  In December 2011, the HRC, City, and Plaintiff discussed the terms of a settlement agreement in which Plaintiff would dismiss his HRC complaint, Guild grievance, and lawsuit in consideration for

1  reinstatement as Detective with payment of back wages at a Sergeant's

2  pay rate.    In February 2012, these terms were reduced to a written

3  Settlement Agreement between Plaintiff, City, and the HRC.    *See* ECF

4  No. 1, at App. C.    The Settlement Agreement had an integration clause

5  which stated:

6          This agreement comprises the entire agreement of the
        parties with respect to the above-referenced complaints.
7          No other agreement, statement, or promise made by any party
        with respect to this complaint, which is not included in
8          this agreement, shall be binding or valid.

9  ECF No. 1, at App. C.    Importantly, the agreement was "contingent on

10 approval by the Spokane City Council and will become effective upon

11 approval by the Washington State Human Rights Commission."    *Id*.    The

12 Settlement Agreement was signed by Plaintiff, Mayor Condon, and an

13 assistant city attorney.

14         On February 22, 2012, the HRC informed the parties that it would

15 not approve the Settlement Agreement.    On February 27, 2012, the City

16 Council voted unanimously to reject the Settlement Agreement.    The

17 same day, Plaintiff sent a letter to the City notifying Defendants

18 that Plaintiff had withdrawn his HRC Complaint and offered a new

19 settlement agreement containing the same terms as the previous

20 agreement but not including the HRC as a party.    No representative of

21 the City signed or accepted the newly proposed settlement agreement.

22 Plaintiff filed the instant action the next day.

23 **B.    Procedural History**

24         On February 28, 2012, Plaintiff filed suit in Spokane County

25 Superior Court alleging a eleven different claims, including violation

26 of due process under 42 U.S.C. § 1983 and violations of the Americans

ORDER – 5

1    with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Washington

2    Law Against Discrimination (WLAD), RCW Chapter 49.60.    ECF No. 1.    On

3    March 15, 2012, Defendants removed the lawsuit to this Court pursuant

4    to 28 U.S.C. §§ 1331 and 1441(b)-(c).    *Id.*    A telephonic scheduling

5    conference was held on June 19, 2012, ECF No. 12, and a jury trial was

6    set for April 14, 2014, ECF No. 14.

7        On February 4, 2013, Plaintiff moved for partial summary

8    judgment, asking the Court to find, as a matter of law, that Plaintiff

9    was "disabled" within the meaning of both the Americans with

10   Disabilities Act (ADA) and Washington's Law Against Discrimination

11   (WLAD).    ECF No. 17.    Plaintiff contemporaneously filed a motion to

12   seal eleven of the exhibits.    ECF No. 21.    On April 3, 2013, the Court

13   granted in part and denied in part Plaintiff's Motion to Seal, and

14   denied Plaintiff's Motion for Partial Summary Judgment.    ECF No. 32.

15       On September 27, 2013, Defendants moved to exclude expert

16   witnesses Mark Mays and Scott Stephens, ECF Nos. 37 & 39.    On October

17   3, 2013, Defendants' moved for a protective order for the continuation

18   deposition of Anne Kirkpatrick.    Subsequently, on October 15, 2013,

19   Plaintiff's moved to compel production of communications and documents

20   pertaining to Plaintiff's employment history, termination, and

21   *Loudermill* hearing.    ECF No. 49.    After the November 7, 2013 hearing,

22   the Court permitted the parties to supplement their expert reports.

23   On November 19, 2013, Defendants filed supplemental replies addressing

24   the new expert reports.    ECF Nos. 64 & 66.    On November 25, 2013,

25   Defendants filed for summary judgment.    ECF No. 71.    On November 27,

26

1  2013, Plaintiff moved to exclude Defendant's expert Michael Brasfield.

2  ECF No. 84.

3  ### III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4  **A.  Legal Standard**

5  Summary judgment is appropriate if the "movant shows that there

6  is no genuine dispute as to any material fact and the movant is

7  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

8  Once a party has moved for summary judgment, the opposing party must

9  point to specific facts establishing that there is a genuine dispute

10  for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If

11  the nonmoving party fails to make such a showing for any of the

12  elements essential to its case for which it bears the burden of proof,

13  the trial court should grant the summary judgment motion. *Id.* at 322.

14  "When the moving party has carried its burden under Rule [56(a)], its

15  opponent must do more than simply show that there is some metaphysical

16  doubt as to the material facts. . . . [T]he nonmoving party must come

17  forward with 'specific facts showing that there is a genuine issue for

18  trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

19  574, 586-87 (1986) (internal citation omitted) (emphasis in original).

20  When considering a motion for summary judgment, the Court does not

21  weigh the evidence or assess credibility; instead, "the evidence of

22  the non-movant is to be believed, and all justifiable inferences are

23  to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

24  242, 255 (1986).

25  //

26  /

**B.    Discussion**

First, as required by the Court's Scheduling Order, ECF No. 14, Plaintiff filed notice on November 22, 2013, that with discovery completed he would continue to pursue all of his original eleven claims.    ECF No. 68.    The same day, Defendants filed notice of each affirmative defense they planned to pursue at trial.    ECF No. 69.    On November 25, 2013, Defendants filed for summary judgment on all of Plaintiff's eleven claims.    However, at the February 20, 2014 hearing, Plaintiff withdrew his Fifth (Emotional Distress), Sixth (Negligence), Seventh (Outrage), and Eleventh (Equitable Estoppel) Claims.    The Court addresses the remaining claims in turn.

1.    <u>Second Claim: Breach of Contract</u>

Defendant moves for summary judgment on Plaintiff's breach of contract claim.    Plaintiff maintains that an enforceable settlement agreement was reached in a conversation in 2011, and was later reduced to writing in February 2012 to the Settlement Agreement.    Plaintiff argues that either the conversation in 2011 or the Settlement Agreement created an enforceable contract between Plaintiff and the City.

Washington follows the objective manifestation test for contracts.    *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn2d 692, 69 (1998).    For a contract to form, the parties must objectively manifest their mutual assent.    *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn2d 371, 388 (1993).    Settlement agreements are governed by general principles of contract law. *Stottlemyre v. Reed*, 35 Wn. App. 169, 171 (1983).

Here, the Court finds that no enforceable contract existed. In December 2011, the HRC, City, and Plaintiff discussed a settlement agreement in which Plaintiff would dismiss his HRC complaint, Guild grievance, and lawsuit in consideration for reinstatement as Detective with payment of back wages at a Sergeant's pay rate. *See* ECF No. 95-6. In February 2012, these terms were reduced to a written Settlement Agreement between Plaintiff, City, and the HRC. *See* ECF No. 1, at App. C. The Settlement Agreement had an integration clause which stated:

> This agreement comprises the entire agreement of the parties with respect to the above-referenced complaints. No other agreement, statement, or promise made by any party with respect to this complaint, which is not included in this agreement, shall be binding or valid.

ECF No. 1, at App. C. Plaintiff signed this agreement with the integration clause, objectively indicating that Plaintiff believed there were no other agreements between the parties. Included in this agreement was the requirement that it was "contingent on approval by the Spokane City Council and will become effective upon approval by the Washington State Human Rights Commission." *Id*. Plaintiff acknowledged that at the time he signed the Settlement Agreement he "underst[ood] that it would not become effective until the Human Rights Commission approved it." ECF No. 79-5, at 71: 8-11. However, on February 22, 2012, the HRC informed the parties that it would not sign the Settlement Agreement. Furthermore, on February 27, 2012, the City Council voted unanimously to reject the Settlement Agreement. Accordingly, no enforceable agreement existed because the necessary approval of both the HRC and City Council did not occur. Even if a

1  valid contract existed between the City and Plaintiff at the time

2  Plaintiff and Mayor Condon signed the Settlement Agreement, the

3  approval by the HRC and City Council were necessary conditions

4  precedent, which when such approval did not occur, any performance

5  under the agreement was excused. *See Ross v. Harding*, 64 Wn.2d 231

6  (1964) (holding that obtaining written consent was a condition

7  precedent to specific performance where the contract provided that the

8  offer was made subject to written consent); Restatement (Second) of

9  Contracts § 224 (1981) (A condition is "an event, not certain to

10 occur, which must occur, unless its non-occurrence is excused, before

11 performance under a contract becomes due."). Therefore, the record is

12 clear that the only proposed contract was the agreement reduced into

13 writing in the Settlement Agreement, signed by Plaintiff and Mayor

14 Condon, which would reinstate Plaintiff on the terms established in

15 December 2011, upon the approval of HRC and the City Council. Such

16 approval did not occur meaning a contract either was not formed, or

17 alternatively, any performance did not become due.

18      Accordingly, Defendant's motion as to Plaintiff's Second Claim

19 of Relief, breach of contract, is granted.

20      2.   <u>Tenth Claim: Promissory Estoppel / Implied Contract</u>

21      Defendant's also move for summary judgment on Plaintiff's claim

22 of promissory estoppel and implied contract. Plaintiff maintains that

23 he reasonably relied upon the promise of reinstatement when he

24 resigned his employment in Alaska in order to resume his position with

25 SPD. To succeed on a claim of promissory estoppel Plaintiff must

26 establish:

ORDER - 10

(1) [a] promise that (2) the promisor should reasonably expect to cause the promisee to change his position and (3) that does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

*Bakotich v. Swanson*, 91 Wn App. 311, 319 (Wash. Ct. App. 1998) (citing *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 259 n.2 (1980)). However, as discussed above, the Settlement Agreement required, and Plaintiff acknowledged, that the reinstatement depended upon the independent decision of two other organizations, the HRC and the City Council. Accordingly, Plaintiff knew that if either organization rejected the agreement he would not be reinstated. At the time Plaintiff resigned his employment in Alaska the condition of approval by HRC and the City Council had not been satisfied. Under such facts, the Court finds only one possible conclusion – any reliance was unjustified. *See Pacific Cascade Corp. v. Nimmer*, 25 Wash.App. 552, 559-560 (conditional promise can serve as basis of estoppel claim only if condition is satisfied prior to action taken in reliance on that promise); *Havens v. C & D Plastics, Inc.,* 124 Wash.2d 158, 181 (1994) ("Ordinarily, whether reliance was justifiable is a question of fact, but when reasonable minds could reach but one conclusion, summary judgment is appropriate."). Accordingly, Defendant's motion as to Plaintiff's Tenth Claim of Relief, promissory estoppel and implied contract, is granted.

//

//

/

ORDER – 11

3.    <u>Remaining Claims</u>

As to the remaining claims of disability discrimination, violation of due process, vicarious liability, wrongful withholding of wages, and retaliation, the Court continues to take Defendant's Motion for Summary Judgment under advisement.

**IV.    <u>CONCLUSION</u>**

Accordingly, **IT IS HEREBY ORDERED**: Defendants' Motion for Summary Judgment, **ECF No. 71**, is **GRANTED IN PART** (Plaintiff's Second, Fifth, Sixth, Seventh, Tenth, and Eleventh Claims) and **TAKEN UNDER ADVISEMENT IN PART** (remainder).

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  <u>28th</u>  day of February 2014.


_____
s/ Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge
